Case number 14-1571, the United States of America v. Paul William Hilton. Four arguments not to exceed 15 minutes per side. Mr. Harold Gurwitz for the Apollo. Good morning, Your Honors. May it please the Court. Harold Gurwitz, appearing on behalf of Paul Hilton. In this appeal, we are requesting this Court to reverse the decision of the District Court from April 10, 2013, which denied Mr. Hilton's motion to suppress evidence derived from the forensic examination of a BlackBerry cell phone. The cell phone was seized by officers and retained by an officer of the Sheriff's Department in Missouri during the course of a supervised release search that was conducted at Mr. Hilton's home that morning. Mr. Hilton's statements, which were relied upon by Detective Roth from the St. Charles County Sheriff's Department in support of his application for that search warrant, were coerced, involuntary, and in violation of the Fifth Amendment. Mr. Hilton was interrogated by his probation officer, Mr. Vestal, in his vehicle outside of his house after he greeted the officers at his front door. He was handcuffed, chained, taken to the vehicle, sat there while the search was going on, where Officer Vestal asked him questions, particularly focusing upon the location of a BlackBerry cell phone. According to Judge Borman's order of April 10, he concluded, for the purposes of his order, that Mr. Hilton identified that phone as being present in the kitchen of the house before it was found. Mr. Hilton was coerced by the combination, then, of the physical conditions and circumstances of the search along with the conditions of his supervision from his prior supervised release order. In this circumstance, it is our position that the Fifth Amendment is self-executing and did not require him to explicitly assert it. This is not an issue, as the government has suggested in its response brief, with regard to the coercive aspect of these conditions that was raised for the first time on appeal to this court. Indeed, as Judge Borman found in his opinion at page 2, page 11 of his order particularly, that he found that there was no coercion. That was a factor which he considered and rejected, and we contend that was improper. It is our position that this combination created the classic penalty situation of the kind first described by the Supreme Court in Murphy v. Minnesota, where the state would expressly or by implication assert that implication would lead to revocation of probation. It would create a classic penalty situation. It is our position that the condition, Condition No. 3 of Mr. Hilton's probation or supervised release did precisely that. This statement was not voluntary, as was Mr. Murphy's in the opinion of the Supreme Court. It was not made by Mr. Hilton during the course of a regular office visit, as was Mr. Murphy's. It occurred while Mr. Hilton, who according to the testimony of Officer Vestal at the suppression hearing, had previously gone through the process of a supervised release violation in the District Court in Missouri, where he was being supervised. So he was familiar with those conditions and knew what the point of this was. It was certainly an unusual circumstance, far removed from a regular probation visit, because it was not just Officer Vestal there, it was a team that was simultaneously searching his house. And he knew it was also focused upon the existence of a BlackBerry cell phone, which without dispute was something that was strictly prohibited by the special conditions of his supervised release. In Murphy, the Court did not find that there was a penalty situation, but it did emphasize at footnote No. 5 of its opinion that Murphy was not under arrest and that he was free to leave at the end of his meeting. And they said a different situation would be presented if he had been interviewed by his probation officer while being held in police custody, or by the police themselves in a custodial setting. That is precisely what did occur here. This application has been addressed by circuit courts, including this one in the Vreeland decision. We referred in our brief, and I think you have to look to first in this analysis, the Sechau, S-A-E-C-H-A-U decision from the Ninth Circuit, in which the Court affirmed suppression of a statement made by Mr. Sechau to a state court probation officer, which was then used to prosecute him for possession of a firearm, which he admitted to the state court officer. The Court said that that was a classic penalty situation, because it was obviously apparent that the state court officer was required to report Mr. Sechau's statements to law enforcement authorities. The Court said there was a reasonable basis for concluding that the statement would be used against him. The Second Circuit, in United States v. Robinson, which we have cited in our briefs, I think the government has as well, found that asserting a Fifth Amendment privilege in response to a probation officer who inquires in that case for someone who was on supervised release for a monetary violation about the source of income that he had reported on his tax return was not compliance. It is our position that that clearly establishes that the interpretation of the language, essentially similar to or the same as what we have in Condition No. 3, would apply here so that the Court should conclude that assertion of a privilege in this circumstance would have not been compliance with Officer Vestal's demands that Mr. Hilton identify the existence of the Blackberry and the contents of the Blackberry. More recently, in the Bar— One of these cases, Reed, Murphy, and I guess the other one was Freeland, I believe. Even if there's a violation of the Fifth Amendment—Freeland, I guess is the name of the case— even if there's a violation of the Fifth Amendment, it was seen that the prosecution would not be quashed or suppressed if the probationer or the person on supervised release is not threatened with revocation in terms of whether he refuses to answer or not. And seemingly there was no such threat in this particular case, which would suggest that even though the Miranda rights of the defendant might not have been observed here, it would not result in the prosecution being thrown out under these facts. What would you say about that? Two things, Your Honor. First, in the Murphy decision, the court identified the circumstances or conditions as being either explicit or implicit. It is clear that the language of the supervised release violations themselves indicate that a violation of those terms would be a basis— a revocation of supervised release. And that was exactly what Mr. Hilton's experience was on supervised release in 2007 when he was violated and placed on these conditions which he was serving at the time of this particular search. The second thing I have to say is that the circumstance of this particular interrogation in a police vehicle arrested in custody without any question is also an implicit communication to Mr. Hilton that his problem in this case is one that will lead to at least revocation, if not more particularly a much more serious violation as has been charged here. The Vreeland case was one in which this court affirmed the rejection of a suppression of statements made by Mr. Vreeland to his probation officer in the officer's office. He went in for a regular visit and the court ultimately, I think, decided that by concluding that there Mr. Vreeland lied to the officer. And the opinion of this court says explicitly that the Fifth Amendment does not protect lives. That is far different than the circumstance we have here. Our case is much closer to those discussed by the courts in Satcho, in Barr. We have cited also Swanson from the Seventh Circuit which is not supervised release, but a condition that was explicitly set forth in an arrest warrant that bond would not be provided to the individual arrested unless he talked to the officer and told him where a gun was. That's exactly the kind of circumstance that was here. So based upon that, it's our position that these statements should have been suppressed by Judge Borman and he should have gone on to the next step to find that without them, the application by Detective Roth, not the probation officer, to obtain a warrant to examine that BlackBerry phone should have been suppressed. It can't be saved by good faith. This is a Fifth Amendment violation. And even if the court were to look at a Fourth Amendment good faith analysis in this circumstance, there was no finding at all by the court. If I could just one... You'll have to ask Judge Batchel. You may conclude. Thank you. Just my final comment about that is that... It's difficult to focus on that. I'm sorry, Your Honor. It is that in this circumstance... That's it. I'll save my other comments for rebuttal. Thank you very much. Thank you. Good morning, Your Honors. I'm Evan Kamenker representing the United States. For the defendant to win relief, he must show two different things. First, that the main set of statements to his probation officer were coerced, not just unwarned. And second, that that was the basis for all the evidence that he wants to actually suppress now under the fruit of the poisonous tree doctrine. Neither one of those contentions is supported in this record. I'd like to start with the question of the coerced confession, and I would like to go straight to Judge Clay's question. For the defendant to win, he must show two things. First, that Standard Condition 3, which was adopted by the U.S. Sentencing Commission just three years after the Murphy decision and applied nationwide, actually imposes a penalty for somebody who rightfully invokes the Fifth Amendment under appropriate circumstances. And second, that in the facts of a particular case, that coercive impact actually operated to overwhelm the resistance of this particular defendant. That's the language of the court in Murphy. This court has used similar language in other coerced confession cases, talking about whether there was an objective force that was coercive, but also whether that force was the crucial motivating factor for this particular confession. Even assuming for the moment, which the government denies, that the condition here would actually render invocation of the Fifth Amendment noncompliant, there's still no showing that it actually was the causal, the crucial motivating factor for this particular confession. As Your Honor noted, the court in Vreeland and the Supreme Court in Murphy focused specifically on the fact that the probation officer in neither of those cases either explicitly or implicitly told the probationer, hey, if you take the Fifth, I'm going to revoke your probation. Does it make any difference that in those cases, the probationer was not in the kind of custodial situation that Hilton was? No, Your Honor. I agree that that is a factual difference between the cases, but in the Murphy case, the Supreme Court treated those two lines of analysis as completely separate. Was there a coerced confession or a Miranda violation that had to do with custody? The court in that case held no. And secondly, was there a penalty violation? The presence of handcuffs do nothing to suggest that there was any coercive impact of this particular condition, which is what Hilton has to argue to win here. As his counsel just indicated, Hilton surely knew something was different this time. Unlike the usual unannounced visits when the probation officer came to his door, this time he came with law enforcement officers and said, we're going to search the phone and put him in handcuffs, which is normally what you do when you're searching somebody's house. So obviously Hilton knew something was different, right? But if he actually was worried about revocation, it would have been because he knew that they were searching for the BlackBerry and he knew what would be found in the BlackBerry. There's no suggestion that the handcuffing gave him the suggestion that, oh, I'm going to be revoked because of this condition. There's no direct evidence that was in his mind. This court in the Vreeland case and the Supreme Court in Murphy found that to be telling. Moreover, in Murphy, the court specifically noted that the confession that was given was partly inculpatory but partly exculpatory. And Murphy said that actually, quote, strongly suggests that the threat of revocation did not overwhelm the defendant's resistance. That's true of this confession as well. It was partly incriminatory, but it was also partly exculpatory. He told Officer Vestal he didn't take any of the photos that would be found on the BlackBerry and he also blamed it on the fact that he recently had lost his mother and had lost his child. The district court found as a matter of fact that defendant Hilton was a very intelligent man and was, quote, quite used to interrogation by law enforcement.  and that the Supreme Court looked at in Murphy fall against a finding of coercion with the one exception being Your Honor's point about the handcuffs. But that alone cannot be thought of as a coercive threat enough under these circumstances to make this actually coerced because that is simply the signal that there was custodial interrogation. That's what made the government concede Miranda warnings ought to have been issued. That can't be the kind of thing that also automatically turns into a finding of coercion. Your Honors, let me now come back and talk about the condition itself. That condition also is not properly interpreted to impose a reasonably perceived threat of revocation. That's the language of the court in Murphy. The wording is slightly different from the condition at issue in Murphy, but there's nothing in that wording that should overcome the interpretive presumption that the court applied in the Murphy case. In Murphy, the court said the reason the language doesn't rise to a level of a perceived threat of revocation is because of the background presumption that, quote, every schoolboy knows, unquote, his Fifth Amendment rights. If you start with that assumption, there's nothing particular about the words in this standard condition three, again, applicable nationwide and adopted just three years after Murphy, that suggests it was intended or would reasonably be understood by a probationer as saying, I can't even invoke my Fifth Amendment rights where that would be appropriate. The Satcho case that Hilton relies on is distinguishable. There, the court was interpreting an Oregon State condition, and the Oregon State courts had already given an authoritative interpretation that the Ninth Circuit was bound to follow. It's also distinguishable for a second reason, that on the facts of that case, the probation officer warned the probationer specifically of these conditions, of his duty to answer all questions truthfully, right before he asked the question. That, again, is the kind of contemporaneous evidence of actual coercion that is completely lacking in this case. Your Honors, if there are no further questions about the confession question, I would like to turn to the second issue, which is even if this court finds a violation of the Fifth Amendment, and not just Miranda, or chooses not to reach that question, another straightforward route to affirming the district court below is simply to find that none of the evidence that is challenged here is truly fruit of the poisonous tree. The key issue here is the search of the contents of the BlackBerry. And as the government indicated in its briefing, the fact that the government did seek a search warrant, and did rely to some extent on the May statements that Hilton made, the seeking of the search warrant was actually unnecessary on the facts of this case. And that's because Hilton's additional terms number 10 and number 12 specifically authorized a search of a web-enabled smartphone without a warrant, in one case based on reasonable suspicion, and in one case based on no suspicion whatsoever. There's no reason why a search warrant had to be obtained. The search of the phone could have proceeded simply on the basis of the same reasonable suspicion that justified the search of the house in the first place. Hilton has taken the position that that was somehow improper because the police were trying to look inside the cell phone to find evidence of new violations of child pornography offenses. That may be true, but as this court has held repeatedly, when a search is justified under the Knight's reasonableness standard, rather than the old superseded special needs justification for searching parolees, it does not matter who does the actual searching, and it does not matter the actual motivation for the search. In this case, I would add, the district court below specifically held that the contents of the BlackBerry would be a, quote, spot-on compelling place, unquote, to look for evidence of conditions violations. It's not at all unusual for law enforcement to try simultaneously to find evidence of new crimes that will be prosecuted separately as new crimes, but also to use them as evidence in a revocation proceeding. Now, in Hilton's reply brief, he goes on to suggest that there was a problem because the search of the BlackBerry was concluded after revocation. In fact, that's not a problem at all. There, he relies on the Carnes case from 2002, which the part that he's quoting from, again, relies on the special needs justification, which does focus on motive and timing, but that's not what the government is relying on here. When the Carnes case turned to the question of whether or not listening to audio tapes after revocation was reasonable under the ninth standard, it said the answer is no, but only because there was no condition of release that authorized a search on anything less than probable cause with a warrant. Here again, we have conditions 10 and 12 that specifically authorize warrantless searches for a web-enabled cell phone. Officer Vestal indicated in his petition for a warrant for revocation that the officers had taken the cell phone and were going to search it. It was also discussed, again, in his revocation proceeding, and it would have been perfectly appropriate for Officer Vestal to have done what he did initially and sought revocation successfully based on comparatively minor condition violations and then still develop further evidence of a much more serious violation of a condition, the condition that you not commit a new crime while you are on supervised release, and then come back to the judge and ask to reopen that sentence and actually ask that Hilton be imposed, have an even longer custodial sentence reimposed. There's no double jeopardy bar to that whatsoever, and other courts have upheld that practice as well. So even if this court assumes that there was a Fifth Amendment violation, it is clear on this record that the BlackBerry search would have continued simply on the basis of the conditions then applicable. There was no need for a search warrant, so that search would be upheld. Down the road, the searches for the Internet activity, the Google, Yahoo, and Sprint searches, those search warrants relied on the May confession with respect to four sentences and gave 20 paragraphs of other information supporting a finding of probable cause. The confession in November, for reasons outlined in the government's brief, was clearly not tainted, even if one believes that six months earlier there was a coerced confession. Following this court's doctrine and the Supreme Court's rulings in Elstad, there was a six-month period of time between the two, at which point in time Hilton was represented by counsel. There was a complete change in the place of the interrogation. There was a complete change in the personnel who were doing the interrogating, and a district court specifically held that there was a knowing and intelligent waiver of Miranda rights in November. Your Honor, if there are no further questions, I would suggest that the district court ruling be affirmed, both on the ground that there was no coerced confession, and on the ground that in any event there is no fruit of the poisonous tree. Thank you. Thank you, counsel. First, with regard to the Murphy decision, I think it's important for the court to keep in mind that the language of the condition of supervision in that case only required Mr. Murphy to answer truthfully. It didn't require him to answer. It only said anything he said had to be truthful. The condition in this case, number three, says you shall answer. It couldn't be more explicit than that language. Second, with regard to the Carnes decision and the use of the information, it's important also to keep in mind that the supervised release violation was finalized on the same day that Detective Roth finally applied for the search warrant to search the cell phone. His examination happened after the supervised release was terminated and wasn't completed until October of 2011 when Mr. Hilton had been long in custody. It was obtained according to the language of the application only for the purpose of pursuing a new criminal violation. So according to Carnes, the rationale that the conditions of supervision allow the search just do not apply. The assertion that somehow the use of the rule that we would seek, for Mr. Hilton in this case, to suppress this evidence would somehow stymie the enforcement of a standard condition of supervised release, I think just doesn't fit the practical circumstances of this case, which is a unique circumstance where Mr. Hilton was in custody outside his house. He was taken away from the house. He's been in custody ever since the time he met the officers at the front door. Clearly, as Murphy indicated in footnote 5, he was under arrest and that distinguishes his case from those that have been cited or relied upon by the government. The subsequent search warrants that were issued relying upon the information from the May 10 statement not only include a recapitulation of the statements given by Mr. Hilton, but also the fruits of Detective Roth's search. Those make up a substantial part. None of that was reviewed by Judge Borman. And finally, I should say, as I was alluding to at the close of my remarks earlier, that in this case there was no examination of the circumstances in order to attempt to apply a Fourth Amendment good faith analysis by Judge Borman. This Court in Masters at 614 Fed 3rd 236 remanded because there wasn't a basis from which there could be any determination that all of the officers involved in the search itself acted in a fashion that would be consistent with the balancing test. We, first of all, of course, contend that this is a Fifth Amendment issue for which balancing is not appropriate and therefore it isn't necessary to go on to a Leon and Herring analysis. However, if the Court would, I think that there can be no conclusion but that Judge Borman did not make those findings. In fact, at the time of the hearing when Officer Vestal testified, the search warrant affidavit in application had not even been disclosed to us. It wasn't part of what was presented to the Court. So for those reasons, I think it would be important for this Court to go that next step if it concludes that there's a reason to examine good faith. But we believe that that doesn't even apply here because the statement should be suppressed based upon the self-executing privilege that applies in this circumstance, which should be reason for the Court to exclude the statement that was used in Detective Roth's warrant application. We have asked this Court to reverse the decision of the District Court. Thank you, Counsel, and thank you. We note that you are CJA appointed and we appreciate your contribution very much. Thank you.